1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT
                       WESTERN DISTRICT OF WASHINGTON
9

10   TRINITY DIANE LARSON,

11                        Plaintiff,                CASE NO. 2:15-cv-01115 JRC

12           v.                                     ORDER ON PLAINTIFF'S
                                                    COMPLAINT
13   CAROLYN W. COLVIN, Acting
14   Commissioner of the Social Security
     Administration,
15
                          Defendant.
16

17          This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and

18   Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S.

19   Magistrate Judge and Consent Form, Dkt. 5; Consent to Proceed Before a United States

20   Magistrate Judge, Dkt. 6). This matter has been fully briefed (*see* Dkt. 11, 15, 16).

21          After considering and reviewing the record, the Court concludes that the ALJ did

22   not commit harmful legal error when evaluating plaintiff's fibromyalgia or the medical

23   opinion evidence in the record. As noted by the ALJ, other than depression, the only

24

fibromyalgia symptom reported by plaintiff was "debilitating diffuse pain." The ALJ's finding that plaintiff's allegation of debilitating diffuse pain was not consistent with the clinical findings is based on substantial evidence in the record as a whole, as plaintiff regularly demonstrated normal strength, normal range of motion, normal sensation and normal coordination and she reported to her doctors on multiple occasions during the alleged period of disability that she was not experiencing any pain, had no complaints, or only suffered mild pain in localized areas, such as when she had pain in her neck and shoulders after going out dancing two nights in a row.

The ALJ also provided specific and legitimate reasons based on substantial evidence in the record as a whole for failing to credit fully various medical opinions. For example, the ALJ found that some of these opinions were based largely on plaintiff's complaints, which the ALJ found were not credible. The ALJ's adverse credibility finding is not independently challenged by plaintiff and is without harmful legal error.

Therefore, this matter is affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

<u>BACKGROUND</u>

Plaintiff, TRINITY DIANE LARSON, was born in 1977 and was 33 years old on the alleged date of disability onset of November 1, 2010 (*see* AR. 241-44, 245-50). Plaintiff graduated from high school and started college, but did not finish (AR. 50). Most of plaintiff's work experience consisted of cashiering and customer service (AR. 275-86). Plaintiff last worked as a cashier at a fueling station, but it was only part-time temporary work (AR. 51).

According to the ALJ, plaintiff has at least the severe impairments of "grade 1 spondylolisthesis of L3-4 and L4-5, status-post bunion correction surgery, anxiety disorder with PTSD, [and] affective disorder (20 CFR 404.1520(c) and 416.920(c))" (AR. 20).

At the time of the first hearing, plaintiff was living in a house with 3 of her 4 children (AR. 51).

PROCEDURAL HISTORY

Plaintiff's applications for disability insurance ("DIB") benefits pursuant to 42 U.S.C. § 423 (Title II) and Supplemental Security Income ("SSI") benefits pursuant to 42 U.S.C. § 1382(a) (Title XVI) of the Social Security Act were denied initially and following reconsideration (*see* AR. 82-93, 94-105, 108-20, 121-33). Plaintiff's requested hearing was held before Administrative Law Judge Verrell Dethloff ("the ALJ") on June 21, 2013 (*see* AR. 47-67) and continued on November 1, 2013 (*see* AR. 68-79). On November 18, 2013, the ALJ issued a written decision in which the ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act (*see* AR. 15-46).

In plaintiff's Opening Brief, plaintiff raises the following issues:   (1) Whether the ALJ erred by finding that the plaintiff's medically determinable fibromyalgia impairment is "non-severe"; (2) Whether the ALJ erred in evaluating the medical opinion source evidence in the record; and (3) Whether the ALJ erred in assessing the plaintiff's credibility and pain testimony (*see* Dkt. 11, p. 1).

1

<u>STANDARD OF REVIEW</u>

2

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's

3

denial of social security benefits if the ALJ's findings are based on legal error or not

4

supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d

5

1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir.

6

1999)).

7

<u>DISCUSSION</u>

8

(1)    **Whether the ALJ erred by finding that the plaintiff's medically**

9

**determinable fibromyalgia impairment is "non-severe."**

10

11

Plaintiff contends that the ALJ erred by failing to find that her fibromyalgia is a

12

severe impairment. Defendant argues that the ALJ appropriately found that plaintiff's

13

fibromyalgia is not severe, as he found insufficient evidence supporting plaintiff's

14

allegation that her "fibromyalgia impairment results in functional limitations" (AR. 22).

15

Step-two of the administration's evaluation process requires the ALJ to determine

16

if the claimant "has a medically severe impairment or combination of impairments."

17

*Smolen v. Chater*, 80 F.3d 1273, 1289-90 (9th Cir. 1996) (citation omitted); 20 C.F.R. §§

18

404.1520(a)(4)(ii), 416.920(a)(4)(ii) (1996). An impairment is "not severe" if it does not

19

"significantly limit" the ability to conduct basic work activities.  20 C.F.R. §§

20

404.1521(a), 416.921(a).  If a claimant's impairments are "not severe enough to limit

21

significantly the claimant's ability to perform most jobs, by definition the impairment

22

does not prevent the claimant from engaging in any substantial gainful activity." *Yuckert,*

23

*supra*, 482 U.S. at 146. Regarding the establishment of a disability, it is the claimant's

24

burden to "'furnish[] such medical and other evidence of the existence thereof as the Secretary may require.'" *Yuckert, supra*, 482 U.S. at 146 (*quoting* 42 U.S.C. § 423(d)(5)(A)) (*citing Mathews v. Eldridge*, 424 U.S. 319, 336 (1976)) (footnote omitted).

The ALJ supported his finding that plaintiff's fibromyalgia is not a severe impairment in part by noting that plaintiff "did not consistently claim significant fatigue or other symptoms of fibromyalgia beyond her claim of debilitating diffuse pain, and that claim is not consistent with the clinical findings" (AR. 22). For the reasons discussed below, the Court concludes that this finding by the ALJ is supported by substantial evidence in the record as a whole.

First, the ALJ noted that "claimant's treating rheumatologist and her primary care provider consistently found largely negative physical exam findings" (*id.*). This finding by the ALJ is supported by substantial evidence in the record as a whole as the ALJ referenced multiple occasions when plaintiff was examined by a doctor and evidenced normal sensation, normal coordination, normal reflexes, and normal strength, such as on February 8, 2012, when plaintiff "reported sudden onset shoulder and neck pain after going out dancing the previous Friday and Saturday nights" (AR. 28 (*citing* AR. 345-46)) and on April 18, 2012, when plaintiff demonstrated normal strength and coordination, as well as normal range of motion, normal ambulation, and a normal ability to transfer from the seated to the prone position (AR. 29 (*citing* AR. 369-70)). Plaintiff complained of pain on both of these occasions, however the ALJ's inference that if the pain was not severe enough to limit her range of motion, sensation, coordination or strength, it therefore was not severe enough to limit her functional abilities in the workplace is a

1  logical inference based on evidence in the record.  *See Sample v. Schweiker*, 694 F.2d

2  639, 642 (9th Cir. 1999) (the ALJ may "draw inferences logically flowing from the

3  evidence") (*citing Beane v. Richardson*, 457 F.2d 758 (9th Cir. 1972); *Wade v. Harris*,

4  509 F. Supp. 19, 20 (N.D. Cal. 1980)). According to the Ninth Circuit, even if a claimant

5  "has an ailment reasonably expected to produce *some* pain; many medical conditions

6  produce pain not severe enough to preclude gainful employment." *Fair v. Bowen*, 885

7  F.2d 597, 603 (9th Cir. 1989) (*citing* 42 U.S.C. § 423(d)(5)(A) (other citations and

8  footnote omitted)).

9         Perhaps more importantly, the ALJ supported his finding that plaintiff's claim of

10  debilitating diffuse pain is not consistent with the clinical findings by noting multiple

11  times in his written decision when plaintiff herself reported to her doctors a lack of

12  debilitating diffuse pain. For example, the ALJ noted that on February 8, 2012, despite

13  reporting shoulder and neck pain after going out dancing for two nights in a row,

14  "examination of the cervical spine revealed no tenderness or pain to palpitation," and

15  examination "of the right shoulder revealed  .  .  .  .  no tenderness or pain to palpation"

16  (AR. 28 (*citing* AR. 345-46)). Despite alleging disability onset of November 1, 2010, the

17  ALJ noted that in late February 2012, plaintiff complained for the first time of diffuse

18  joint and muscle pain (AR. 28). However, the ALJ also noted that in early June 2012,

19  although plaintiff complained of mild mouth and jaw pain, she "did not mention joint or

20  other pain," and was "in no apparent distress" (AR. 31). Although plaintiff did mention

21  neck pain in addition to the mouth and jaw pain at this examination, the assessment by

22  the treating physician explicitly indicated that plaintiff's "pain is characterized as mild"

(AR. 335). The ALJ noted that on June 14, 2012, plaintiff "complained mainly of pain in her upper back and neck," but "seemed again to be in good health and was in no apparent distress" (AR. 31 (*citing* AR. 458). Finally, the ALJ noted that six weeks after plaintiff received bunion surgery, on September 11, 2012, plaintiff "demonstrated pain-free range of motion" (AR. 33 (*citing* AR. 423)). At this September 11, 2012 appointment, plaintiff reported no complaints (*see id.*). The Court concludes that the ALJ's finding that plaintiff's claim of debilitating diffuse pain is not consistent with the clinical findings is a finding based on substantial evidence in the record as a whole, as plaintiff regularly reported no pain or only mild pain in discreet localized areas.

The ALJ also noted plaintiff's acknowledgment that she stopped "taking all pain medications because she feared the effects on her kidney or liver and wanted to have no medications in her system when she attended and upcoming pain clinic appointment" (AR. 25).

Based on the reasons stated and the record as a whole, the Court concludes that the ALJ's finding that insufficient evidence in the record supports plaintiff's allegation of severe fibromyalgia is based on substantial evidence in the record as a whole. The ALJ did not commit harmful legal error when concluding that plaintiff's fibromyalgia was not a severe impairment.

>    (2)    **Whether the ALJ erred in evaluating the medical opinion source**
>            **evidence in the record.**

Plaintiff contends that the ALJ erred when evaluating the medical opinion source evidence in the record (Dkt. 11, pp. 6-12). Defendant contends that the ALJ properly

resolved the medical evidence (Dkt. 15, pp. 10-14). Discussed herein are medical

opinions from both a treating physician and consultative examining physicians.

The ALJ is responsible for determining credibility and resolving ambiguities and

conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)

(*citing Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).  When an opinion from

an examining or treating doctor is contradicted by other medical opinions, the treating or

examining doctor's opinion can be rejected only "for specific and legitimate reasons that

are supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830-

31 (9th Cir. 1996) (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995);

*Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). In general, more weight is given

to a treating medical source's opinion than to the opinions of those who do not treat the

claimant. *Lester, supra*, 81 F.3d at 830 (*citing Winans v. Bowen*, 853 F.2d 643, 647 (9th

Cir. 1987)). It is not the job of the court to reweigh the evidence: If the evidence "is

susceptible to more than one rational interpretation," including one that supports the

decision of the Commissioner, the Commissioner's conclusion "must be upheld." *Thomas

v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (*citing Morgan, supra,* 169 F.3d at 599,

601).

a.  Examining doctor, Dr. Paul Z. Seville, M.D.

Dr. Seville examined plaintiff on July 30, 2013 and observed that plaintiff was in

"no acute distress" (AR. 524-29). He also observed that plaintiff was "able to get into and

out of the seated position with mild to moderate difficulty due to pain in her hips and her

lower back" (AR. 527). Dr. Seville noted that one inconsistency appeared to be the fact

1   that despite plaintiff's report of being homeless she was "driving what appears to be a

2   relatively new truck" (*id.*). Dr. Seville noted that plaintiff was "able to get on her toes and

3   [was] able to bend without much difficulty," and opined that this fact could represent "a

4   possible other inconsistency" (*id.*). He noted again plaintiff's report that "getting out of

5   the seated position does cause her hip and lower back pain" (*id.*).

6         The ALJ gave much of Dr. Seville's opinion "no weight" (AR. 39). The ALJ

7   found that Dr. Seville's opinion regarding limitations "were based in large part on the

8   claimant's subjective claim that she needed to change positions every 20 minutes and her

9   subjective reports on pain on arising, which the claimant's rheumatologist consistently

10   noted was not to be a problem for the claimant" (*id.* (*citing* Exhibits 2F, 1F)). This

11   finding by the ALJ is supported by substantial evidence in the record as a whole. As

12   noted by the ALJ, in April, 2012, when visiting rheumatologist, Dr. Kevin Welk, M.D.,

13   plaintiff demonstrated "normal ambulation and normal ability to transfer from the seated

14   to prone position" (AR. 29 (*citing* AR. 369)), and in mid-December 2012, Dr. Welk

15   noted that plaintiff "demonstrated normal ability to transfer from the seated to the prone

16   position" (AR. 34 (*citing* AR. 501)). In addition, the opinion from Dr. Seville itself

17   supports the ALJ's finding that this opinion was based in large part on plaintiff's

18   subjective claim, as Dr. Seville noted this complaint by plaintiff twice, with the second

19   notation in a sentence where Dr. Seville was reporting what "the claimant, herself, noted"

20   (AR. 527). This reason is a specific and legitimate reason based on substantial evidence

21   in the record as a whole for the ALJ's failure to credit fully the medical opinion of

22   examining physician, Dr. Seville.

The ALJ offered a second reason for failing to credit fully the opinion from Dr. Seville (AR. 39). The ALJ found that the observations by Dr. Seville were not consistent with observations from plaintiff's "other treating providers [who] consistently found normal gait, full strength in all muscles, and normal strength and tone in all extremities" (*id.* (*citing* Exhibits 1F, 2F, 6F, 9F)). Dr. Seville's finding of less than full strength in the extremities therefore is inconsistent with consistent findings from other treatment providers of normal strength, as noted already by the Court, making this finding by the ALJ based on substantial evidence as well.

For the reason stated, and based on the record as a whole, the Court concludes that the ALJ provided specific and legitimate reasons based on substantial evidence in the record as a whole for his failure to credit fully the medical opinions of Dr. Seville.

b.   Treating doctor, Dr. Robert R. Jacobsen, M.D.

On July 24, 2013, Dr. Jacobson completed a medical source statement form and provided his opinion that plaintiff was likely to be off task due to pain or other symptoms for 20% of the workday and that she would be absent about three days per month (AR. 516-17). As noted by the ALJ, Dr. Jacobson also "asserted that the claimant was incapable of even 'low stress' work" and opined that plaintiff "had weakness and difficulty using the right hand" (AR. 39).

The ALJ gave "zero weight" to the opinion of Dr. Jacobson (*id.*). First, the ALJ noted that on physical exams, plaintiff "consistently demonstrated full range of motion, full strength in sensation, and normal gait" (*id.*). This finding is supported by substantial evidence in the record as a whole and is inconsistent with the opinion of Dr. Jacobson

that plaintiff had weakness and difficulty using her right hand (AR. 517). For example, on July 1, 2013, three weeks prior to Dr. Jacobson's appointment, plaintiff demonstrated a normal motor examination "with 5/5 power in the deltoids, biceps, wrist extensors, triceps, hand intrinsic, quadriceps, hamstrings, dorsiflexors, extensor hallucis longus and plantar flexors bilaterally" (AR. 510). Dr. Jacobson's opinion regarding weakness and difficulty using the right hand also is inconsistent with the opinion of Dr. Seville on July 30, 2013 that plaintiff did not have any limitations with respect to manipulation with her right hand (*see* AR. 520).

The ALJ also found that Dr. Jacobson gave more weight to the claimant's subjective complaints then to his own clinical findings, given the consistent normal clinical observations. This is an inference logically flowing from the evidence. *See Sample, supra*, 694 F.2d at 642 (*citing Beane*, *supra,* 457 F.2d 758; *Wade*, *supra,* 509 F. Supp. at 20) (The ALJ may "draw inferences logically flowing from the evidence"). The ALJ noted that plaintiff's "complaints to providers and at hearing are out of proportion to the clinical or objective findings" (AR. 39).

For the stated reasons, and based on the record as a whole, the Court concludes that the ALJ provided specific and legitimate reasons based on substantial evidence in the record as a whole for his failure to credit fully the opinion of substantial limitations by Dr. Jacobson.

c.  Examining doctor, Dr. Anslem A. Parlatore, M.D.

Dr. Parlatore completed a consultative examination of plaintiff on July 26, 2012 (AR. 375-79). Dr. Parlatore diagnosed plaintiff with PTSD, dysthymia and panic disorder

with agoraphobic features (AR. 370). Dr. Parlatore opined that plaintiff "does have the ability to reason and understand and her memory, concentration, pace and persistence seem organically cognitively intact but her social interaction and adaptation are seriously and markedly impaired" (AR. 378). Dr. Parlatore's next sentence reflects the basis for this opinion: "[plaintiff] hardly leaves the house and is overwhelmed emotionally and is in a considerable amount of emotional turmoil and anguish" (*id*.). Dr. Parlatore also opined that plaintiff would be expected to have difficulties performing activities within a schedule, maintaining regular attendance, being punctual within customary tolerances, and completing a normal workday or workweek without interruptions from psychologically-based symptoms (*see id*.).

The ALJ gave the opinion from Dr. Parlatore "very little weight" (AR. 38). The ALJ found that plaintiff's "presentation at the Parlatore hearing was not indicative of her longitudinal presentation as shown in the medical evidence of record or in the claimant's reported activities" (*id*.). This finding by the ALJ is supported by substantial evidence in the record as a whole. As noted by the ALJ earlier in the written decision, plaintiff "reported that she regularly went to her child's preschool and attended medical appointments and shopping when needed" (AR. 36 (*citing* AR. 291-98)). The ALJ also noted that despite plaintiff's report that she had canceled medical appointments because of social anxiety or the inability to leave the house, "this is not reflected in the record" (AR. 36). The ALJ also noted that plaintiff "admitted to going dancing two nights in a row in February 2012 and admitted to attending a party in July 2013" (AR. 36 (*citing* AR. 345, 511)). These observations by the ALJ demonstrate the inconsistency between the

record and part of the premise for Dr. Parlatore's opinion regarding serious and marked

impairment in social interaction and adaptation, that is, that "[plaintiff] hardly leaves the

house  .  .  .  ." (AR. 378).

The ALJ noted that plaintiff never sought medications for anxiety (AR. 37). The

ALJ also noted that regarding plaintiff's "claimed difficulty leaving her home or being in

crowds," plaintiff's residual functional capacity ("RFC") "accommodates her need to

avoid crowds and the public in general" (AR. 36). The ALJ also noted that plaintiff's

RFC "further restricts her work to non-collaborative work to accommodate any further

social anxiety" (*id*.). The ALJ found that no "further social restrictions are warranted

under the record, [] given the claimant's consistent presentation at medical appointments

and her reported activities" (*id*.).

Regarding his reasoning for failing to credit fully the medical opinion of Dr.

Parlatore, the ALJ noted that "other providers found the claimant to be in no

apparent/acute distress and be cooperative and pleasant" (AR. 38). The ALJ also noted

that although plaintiff sometimes became tearful during appointments, usually, plaintiff's

"affect and mood were noted to be normal" (*id.*). Again, this finding by the ALJ is

supported by substantial evidence in the record as a whole.

For example on April 7, 2011, on examination, plaintiff appeared to be in no

apparent distress (AR. 359). Although plaintiff complained of anxiety and depression at

this appointment, Dr. Jacobson noted that these complaints largely were due to the fact

that her ex-significant other had slammed the door in her face, smashing her nose, and

she was "going through legal proceeding with him" (*id*.). Plaintiff had no "other acute

complaints at all," and did not mention any difficulties with social interaction or

adaptation (*see id.*). Similarly, on December 14, 2011, Dr. Jacobson observed that

plaintiff was alert and cooperative, and was not in acute distress (AR. 349). Dr. Jacobson

opined that plaintiff was demonstrating "normal mood and affect" (AR. 350). On

February 29, 2012, Dr. Jacobson opined that plaintiff "appears well" and was alert and

oriented (AR. 343). Again, Dr. Jacobson observed that plaintiff's affect was "normal and

appropriate" (*id.*). He specified that plaintiff's evaluation revealed "normal mood and

affect and appropriate judgment and insight" (*id.*). As noted by the ALJ, plaintiff did not

mention depression at this examination, and also does not appear to have mentioned

anxiety (*see* AR. 342-44). In June, 2012, Dr. Jacobson again observed that plaintiff

appeared well and was alert, oriented, and in no apparent distress (AR. 335). Dr.

Jacobson opined that plaintiff's evaluation revealed "normal mood and affect and

appropriate judgment and insight (*id.*). On June 14, 2012, plaintiff appeared to be in good

health and was in no apparent distress (AR. 459). She was alert and responding

appropriately to questions (*see id.*). Again, plaintiff does not appear to have reported any

difficulties with depression or anxiety at this appointment, although she mentioned that

she had been suffering from "stress over the past year with the father of her children"

(AR. 459-61). On October 1, 2012, plaintiff appeared well, with no apparent distress, and

was alert and oriented (AR. 489). Dr. Jacobson opined that plaintiff demonstrated a

"bright affect" (*id.*). He opined that plaintiff demonstrated "normal mood and affect"

(AR. 490). On April 10, 2013, Dr. Jacobson opined that plaintiff demonstrated "normal

mood and affect, [as well as] appropriate judgment and insight and unimpaired recent and

remote memory" (AR. 483). On July 1, 2013, plaintiff denied being depressed (AR. 509).

On July 30, 2013, plaintiff was in no acute distress and was described as being "pleasant

to deal with" (AR. 527). The ALJ's citations to the record demonstrate significant

inconsistency between the presentation of plaintiff at her consultative psychiatric

examination with Dr. Parlatore and the remainder of the treatment record. Substantial

evidence in the record supports the finding by the ALJ "that the claimant's presentation at

the consultative psychiatric examination did not reflect her usual presentation or

functioning" (AR. 38).

      For the reasons stated and based on the record as a whole, Court concludes that the

ALJ provided specific and legitimate reasons that are based on substantial evidence in the

record as a whole for his failure to credit fully the opinions of Dr. Parlatore.

      (3)    **Whether the ALJ erred in assessing the plaintiff's credibility and pain testimony**.

      Plaintiff's argument regarding credibility explicitly is based on plaintiff's

contention that the ALJ erred when assessing the medical evidence (*see* Dkt. 11, p. 13).

Plaintiff provides no independent rationale regarding any error in the ALJ's assessment

of plaintiff's credibility (*see id*.). As the Court has concluded that the ALJ did not err

when assessing the medical evidence, this argument need not be discussed. However, the

Court notes that the ALJ's finding regarding credibility is backed by clear and convincing

reasons. For example, the ALJ noted that plaintiff claimed "at the hearing that she had

canceled medical appointments because of social anxiety or the inability to leave the

house because of pain or depression, but this is not reflected in the record" (AR. 36).

1  Similarly, the ALJ noted that in contrast to plaintiff's allegations of social anxiety and the

2  inability to leave the house, the record "shows that the claimant admitted to going

3  dancing two nights in a row in February 2012 and admitted to attending a party in July

4  2013" (*id.* (*citing* AR. 345 ("[plaintiff] did go out dancing on Friday and Saturday

5  evening"); 511 ("plaintiff says she used [methamphetamine] at a party a few days ago")).

6                                     CONCLUSION

7         Based on the stated reasons and the relevant record, the Court **ORDERS** that this

8  matter be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

9

10        **JUDGMENT** should be for defendant and the case should be closed.

11        Dated this 15th day of April, 2016.

12

13                                     _____
                                        J. Richard Creatura
14                                     United States Magistrate Judge